All right, Mr. Corner, you may proceed when you're ready. May it please the court, counsel, my name is Jason Corner, I represent David Perkins. Mr. Perkins has appealed his conviction of guilty from a bench trial out of Springfield, Missouri, federal court in Springfield. This is after defendant pled guilty to the other counts of an indictment. He went to bench trial on one count, 18 U.S.C. 2241 C. Coming out of that trial, defendant believes that Judge Harpool specifically erred by not committing the crime. The reason for that is because he believes that there was no evidence to show that he had intent to commit this crime when he crossed the state lines into the state of Missouri. That is the sole point of contention for this particular appeal. Now, the government cannot simply establish intent at any time, it must establish intent at the time that, in this particular case, the defendant crossed the state lines. That's where the men's rights and active rights have to meet up in this particular case. Now, there are many ways to do that, and the case law is clear that many pieces of evidence can be shown for that. In this particular case, what we saw were text messages between the defendant and a gentleman named Don Blankenship. These text messages were mostly put into Judge Harpool's ruling after the bench trial, and I believe he leaned heavily on them per his ruling. Now, some issues that we have with the text messages, one, we don't know where Mr. Perkins was at the time that he sent these text messages. Some of these text messages were sent when he was already in the state of Missouri. That does no good to show what his intent was when he crossed into the state. Where he was at the different times when he sent those text messages is important, as is the timeline of the specific text messages. Counsel, let's suppose that he was in Missouri at the time he sent each and every text message. Wasn't there still language in those texts regarding his anticipation of returning to cross state lines to Missouri? I would contend that the text messages that we're looking at in this particular case showed his intentions of what he was going to do in the future. It doesn't say whether he was going to do something in the future, leave the state, and come back. I believe that the majority of the text messages just indicated that he had an intent to do something at some point in the future. Now, the second issue with these text messages, the timeline that I was just alluding to, that the text messages were sent over a broad period of time. May 25th of 2016, I believe it was, until October 15th, 2016. Sporadically in between. These weren't daily text messages. The issue here is, a lot of these cases that we see have communications that are closely contemporaneous to the travel. It's messaging with an undercover, it's messaging with a minor that's then turned over to authorities after the fact, and a lot of these have to do with the specific timeline. On Tuesday, I'm coming to New York to do this. On Tuesday, I can't wait to see you in Pennsylvania. And then the travel occurs. That's not what we're seeing with these text messages. These text messages are much more all over the place and vague, especially when we talk about it in conjunction with the travel. Now, it also goes to, the government here is trying to establish intent at the time he crossed state lines with just general intent. And those are two separate things. To prove him guilty of the case here, they have to prove that he had the intent at the time when he crossed the state line into Missouri. And that is a very important distinction as opposed to just general intent. People's feelings and thoughts change, and they oscillate from back and forth to, I'm going to do something to him, not going to do something to him. People can change their mind. And it's the government's burden here to show that he had that intent at the time he crossed. Counsel, doesn't the record show that he had no work-related reason for traveling to Missouri and that he also had no romantic relationship with Doe's mother? I'm glad you brought that up, Your Honor, because that's actually where I was going next with, that yes, you're correct. And the government tries to show intent, not just through the text messages and some of the other evidence, but they try to show intent by explaining what other reasons why he might have. No, he had no work-related reason to be here, and that came out through the evidence, and he admitted to as much in his interrogation with law enforcement. He did have a romantic relationship with the family. It was not a sexual relationship with the mother. That was clearly talked about, but I do believe the record would show that they used the word love back and forth, and that was a mutual feeling between the mother and Mr. Perkins. So to say that he had no romantic relationship with the mother, I think, would be incorrect. It wasn't a sexual relationship, but there certainly were strong feelings there on both sides. Again, though, the government can't, if the government's going to try to prove intent by simply saying, he wasn't here for work, he wasn't here for a romantic relationship or a sexual relationship with the mother. What they're really trying to do is they're trying to shift the burden onto the defense at that point to say, to give a reason why he was. And that's not how this works. They have to show the reason that he was here was for the sexual contact with the minor, and that it doesn't have to be the primary or the dominant purpose, the case law's very incidental, but they have to prove that he had that intent at the time that he crossed the state line. And they can't shift that burden to me or Mr. Perkins to say, no, no, there was another reason. They need to show that. And these are the problems that we get into with this particular statute. What I argued at the bench trial, and what I still believe now, is that essentially this was a state court sex crime. There were no questions about that. This was a what? Essentially a state court sex crime. There was video of it, there was no question that it occurred. None of that was at issue, and that's why a lot of that was stipulated to for the trial. When Congress tried to get federal jurisdiction over a crime like this, their only way to really do it was to criminalize his intent at the time that he crossed the state lines. And that really did place a high burden on the prosecution. It is a hard element to prove, to not just show that he had intent at some time, but to show that he had intent at a specific time. Now, the cases that we see mostly, like I said, have communications that are close in time to the travel itself. But they can't just say there was intent at some ambiguous time, and they can't say just because sexual contact happened, he had intent at the time that he crossed into the state. But it can be, the intent can be shown by circumstantial evidence, right? I agree with that completely, Your Honor. And here, we have a number, we have many prohibited acts over an extended period of time with the appellate traveling back and forth between Missouri and I think North Carolina, creating videos. Wouldn't all that indicate that these were not many spontaneous acts, but a series of acts pursuant to a plan? The specific videos that came into evidence at trial, that the court's referencing, came during one trip to Missouri. These were not, it's not that every time he came to Missouri there was videotaped conduct. That came into evidence at trial. But that came from one specific trip to Missouri around Thanksgiving of 2016, I believe that it was. So, no, I don't see that as an overall plan. The analogy that I like to make is, well, the people that, some people that are heavy drinkers, right? They drink, they drink, they drink, they wake up the next morning, they say, never again. They regret it. And they might have that feeling for a week or a month and say it's never going to ever happen again. And then they have friends that are going out and they find themselves at a bar and they indulge over again. He doesn't have to, just because he had this sexual contact doesn't mean that at the time that he came into the state of Missouri he had intent to do it. He could have said, this time it's going to be different. This time I just can't wait to see the family. The government has shown us no evidence to show that that was not the case. And that's what I'm looking for. If you're going to convict somebody of something that has a 30-year mandatory minimum, we need evidence of specific intent at the time that the statute calls for, which is when he crossed the state line. I'll reserve the rest of my time for rebuttal. Thank you. Ms. Millward. May it please the Court. Good morning, Your Honors. Amia Miller on behalf of the United States. The defendant's only argument in this case is that the district judge leaned heavily on the text message conversations, which he claims had little to no probative value in determining what the defendant's intent was when he crossed state lines. He does not challenge the admissibility of this, so he really is only challenging the weight that the district court afforded these text messages when the district court found the defendant guilty of his 2241C violation. However, that contention is wholly without merit, and I would direct this Court to its previous case in United States v. Fidele. That case is exactly on point and similar. That defendant was also convicted under the same statute of aggravated sexual abuse in violation of 2241C. He also alleged that there was insufficient evidence to prove that he crossed the state line with the intent to engage in sexual activity with the minors. In that case, this Court specifically held that it is axiomatic that this Court does not pass upon the credibility of witnesses for the weight to be given to their testimony. Credibility determinations are uniquely within the province of the prior of the fact and entitled to special deference. In this specific case, what all the defendant is alleging is that the district court erred in denying his motion for judgment of acquittal because the text messages had little to no probative value. However, when you look at the text messages in this specific case, I think the district court correctly relied on them. In the specific text messages, for example, on May 25th, this is where the text messages start, the defendant stated, dude, it's only been a little over a week and I'm having withdrawals. LOL, she has me hooked. Then you go into some text messages in July of 2016 where he talks about how he's going to wake up the victim to have some morning sexual fun. He also talks about the fact later on that he cannot wait to get back out there. That statement, cannot wait to get back out there, shows his intent, it shows his mental state and that's exactly what the district court put in its written findings of fact that these text messages were very indicative of the defendant's mental state. But even outside of these text messages, and the district court made this clear in his finding of facts, these were just some of the pieces of evidence that the district court relied on. And as this court previously held in Goodale, the victim's testimony alone can be sufficient enough to establish the elements of aggravated sexual abuse that is crossing the state line with the text engagement sexual act. This victim, this testimony came in of the victim through the government's exhibit two, which was the offer of proof and finding of facts for the defendant's pleas of guilty to counts two and three. The victim stated that the sexual abuse started when she was nine years old, which would have been in 2014, and that sexual acts continued until the conclusion of December 11th when the defendant was arrested in Joplin, Missouri when she was 11 years old. So this is almost a two year time period where the defendant was sexually abusing the victim. The victim also stated that the defendant would make her pay in sexual favors for things that she wanted. So material things, and they called it a game that was called tags. This was corroborated through the defendant's own statement when he gave his recorded interview with the case agent. So not only do you have the victim's statements that this defendant was repeatedly coming back to Missouri to have sex with her over a two year period of time, he had no other reason to be in Missouri. His employment in Missouri only lasted from the summer of 2013 until the end of December of 2013. Starting January 1st, his employment records show he was never once again employed in Missouri. And as for the defendant's contention that he also was in love with the mother and was coming back to see that family, I think that is patently false and was proven by the record. As the record demonstrates that this defendant lied about having a girlfriend named Jamie in North Carolina, he led this mother along to continue to have access to the victim. He kept this mother strung along saying, I love you, I want to marry you as the record shows, but he never once engaged in a romantic relationship with her. He told her he could not break up with this fake, fictitious girlfriend he had in North Carolina. And he furthermore told the victim's mother, I want to marry you and I want you guys to meet his family or to visit or made any steps in furtherance of that. Although this defendant did on multiple occasions take this family on many other trips outside of Missouri, however, never to North Carolina. So I think the evidence was not just sufficient, it was overwhelming in this case to show that this defendant, who had no connections or ties to Missouri, the only reason he was coming back was to continue to have sexual contact with this victim. And your honors, if there's no further questions, the government will rest and ask you to affirm the conviction. Thank you very much. You have a minute. Thank you, your honor. As the government just alluded to, it's very clear. My client did terrible things. Mr. Perkins certainly is not a good person. Fortunately, in the United States, we do not have a set of laws for good people and a set of laws for bad people. We have one set of laws for all. In this particular case, the burden is high on the government because it is hard to show intent at the time. The government spent most of the oral argument talking about the bad things that he did when he was here in Missouri. And that was not an issue at any point during the trial. The question is, what was his intent at the time that he crossed state lines? I still contend, even after all of this, that the record is insufficient to prove that element. And that the trial court erred and not granted a motion for judgment on that particular account. I would ask that you concur on that particular account. Thank you all for your time. All right. Thank you very much. And Mr. Korner, I want you to know that the court appreciates your service in the case and your accepting appointment under the Criminal Justice Act. Thank you, Your Honor. All right. With that, the case is submitted.